# SEALED

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA

CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

**JUN 1 2 2008**

JOHN F. CORCORAN, CLERK
BY: _____
DEPUTY CLERK

| | | |
|---|---|---|
| UNITED STATES OF AMERICA and | ) | |
| COMMONWEALTH OF VIRGINIA | ) | |
| EX REL. ANGELA CRAWFORD | ) | |
| | ) | C.A. No. |
| Plaintiffs, | ) | 7:08-cv 00370 |
| | ) | |
| v. | ) | COMPLAINT |
| | ) | |
| SMALL SMILES OF ROANOKE, LLC, | ) | **FILED UNDER SEAL** |
| LATAVIAS ELLINGTON, D.D.S, | ) | **PURSUANT TO** |
| LEONISHA THOMAS, D.D.S., | ) | **31 USC § 4730(b)2 and** |
| CLINT MCQUEEN, D.D.S., | ) | **VA. CODE ANN. § 8.01-216.5** |
| PEGGY LOVECCHIO, D.D.S. | ) | |
| FORBA SERVICES, INC., | ) | |
| FORBA HOLDINGS, LLC,  and | ) | |
| SMALL SMILES DENTISTRY FOR | ) | |
| CHILDREN, P.C. | ) | |
| | ) | |
| Defendants   ) | | **DO NOT PLACE IN PRESS BOX** |
| | | **DO NOT ENTER IN PACER** |

Comes now the Plaintiffs, and for its action, states:

## INTRODUCTION

1.    This is an action to recover damages and civil penalties on behalf of the United States of America and the Commonwealth of Virginia arising out of false claims presented by or caused to be presented by Defendants under the joint Federal-State Medicaid program in violation of Title 31 U.S.C. §§ 3729, *et seq.,* popularly known as the FALSE CLAIMS ACT ("FCA"), and in violation of VA. CODE ANN. §§ 8.01-216, *et seq.,* the VIRGINIA FRAUD AGAINST TAXPAYERS ACT ("VFATA").

2.    Defendants directly and/or through conspiracy with other Defendants violated the FCA and VFATA by submitting or causing Defendant Small Smiles of Roanoke, LLC (the "Clinic" or "Defendant Clinic") to submit to the Medicaid program

false claims involving (1) services that were not medically necessary, (2) upcoded services, (3) services not rendered, (4) falsified statements as to the identity of the provider, and (5) services that failed to meet the legally required quality of dental care.

3.      Defendant Clinic participates in the Medicaid program in the Commonwealth of Virginia, has provided dental services to persons covered by the Medicaid program in the Commonwealth of Virginia, and has billed the Medicaid program in the Commonwealth of Virginia for the services and materials provided to persons covered by those programs.

4.      On June 3, 2008 Relator Crawford and her counsel met with attorneys and other agents of the United States of America, in compliance with 31 U.S.C. § 3730(e)(iv)(B), and voluntarily provided the information on which the allegations herein are based.

5.      On June 3, 2008 Relator Crawford and her counsel met with attorneys and other agents of the Commonwealth of Virginia, in compliance with Va. Code Ann. § 8.01-216.8, and voluntarily provided the information on which the allegations herein are based.

### JURISDICTION AND VENUE

6.      Title 31 U.S.C. § 3732(a) provides that United States District Courts shall have jurisdiction over actions brought under the FCA. Section 3732(b) of the same title provides that "The district courts shall have jurisdiction over any action brought under the laws of any State for the recovery of funds paid by a State or local government if the action arises from the same transaction or occurrence as an action brought under section 3730" of the FCA. The VFATA counts in this action arise from the same transactions or

occurrences as the counts brought under § 3730 of the FCA.

7.    Section 3732(a) of the FCA provides that: "Any action under section 3730 may be brought in any judicial district in which the Defendant or, in the case of multiple Defendants, any one Defendant can be found, resides, transacts business, or in which any act proscribed by section 3729 occurred."    The acts complained herein occurred within this judicial district; and all the Defendants transacted business in this district in furtherance of the acts complained herein.    Defendant Clinic and defendant dentists Thomas, McQueen and Lovecchio reside in this district.

8.    Under both the FCA and the VFATA, this complaint is to be filed in camera. The FCA provides for the Complaint to remain under seal for at least sixty (60) days; and under the VFATA it must remain under seal for at least one hundred twenty (120) days.    The complaint shall not be served on the Defendants until the Court so orders.    The Government may elect to intervene and proceed with the action within sixty (60) days after it receives both the Complaint and material evidence and information from the Relator, while the Commonwealth of Virginia may make a similar election within one hundred twenty (120) days.

## PARTIES TO THE ACTION

9.    *Qui tam* Plaintiff Angela Crawford ("Relator Crawford") is a resident of Montgomery County, Virginia, and a former employee of Defendant Clinic.    Relator Crawford brings this action on behalf of the United States of America and the Commonwealth of Virginia.    Defendant Clinic employed Relator Crawford as a dental assistant from June 2007 to January 2008.    In her employment with the Clinic, Relator Crawford saw patients, prepared patients for treatment, assisted dentists during

3

procedures, administered nitrous oxide to patients, exposed patients to dental diagnostic X-rays, performed some post-operative care, and prepared dental Encounter Forms and other charts and records for approval and signature by dentists. Relator Crawford brings this action based on her direct, independent, and personal knowledge and also on information and belief.

10.    Relator Crawford is an original source of information to the United States and the Commonwealth of Virginia. Relator Crawford has direct and independent knowledge of the information on which the allegations herein are based and has voluntarily provided the information to the Government and the Commonwealth before filing an action under the FCA and the VFATA which is based on the information.

11.    Defendant Clinic is a for-profit professional limited liability company organized and existing under the laws of the Commonwealth of Virginia with the sole purpose of rendering professional services of dentistry, and owns and operates a children's dental practice at premises located at 5002 Airport Rd NW in Roanoke, Virginia.

12.    Defendant Clinic is a wholly-owned direct subsidiary of Defendant Small Smiles Dentistry for Children, P.C., a Colorado professional corporation. Defendant Small Smiles Dentistry for Children, P.C and its subsidiaries own and operate over fifty-seven (57) dental practices nationwide which use the name "Small Smiles" and almost exclusively limit their practice to infants, children and youths eligible for Medicaid.

13.    Defendant FORBA Services, Inc. and Defendant FORBA Holdings, LLC both own interests in Small Smiles Dentistry for Children, P.C., and therefore are indirect owners of Defendant Clinic. Both FORBA entities are for-profit business organizations

existing under the laws of Tennessee. Hereinafter, the two (2) FORBA defendant entities are collectively referred to as "FORBA".

14.    Defendant Latavias Ellington, D.D.S. ("Defendant Ellington") is a dentist licensed to practice in the Commonwealth of Virginia since August 21, 2007 and certified by Virginia's Medicaid program on August 22, 2007. Defendant Ellington is a resident of Bethesda, Maryland, is the Chief Dentist, which is the general manager, of the Clinic, and has been employed by the Clinic since approximately August 2007. At the time of Defendant Ellington's hiring as Chief Dentist at the Clinic, Defendant Ellington had two (2) years' experience practicing dentistry.

15.    Defendant Leonisha Thomas, D.D.S. ("Defendant Thomas") is a dentist licensed to practice in the Commonwealth of Virginia since November 27, 2007 and certified by Virginia's Medicaid program on January 7, 2008. Defendant Thomas is a resident of Roanoke, Virginia, provides dental services at the Clinic, and has been employed by the Clinic since approximately late November 2007.

16.    Defendant Clint McQueen, D.D.S. ("Defendant McQueen") is a dentist licensed to practice in the Commonwealth of Virginia since October 10, 2007 and certified by Virginia's Medicaid program on November 1, 2007. Defendant McQueen is a resident of Roanoke, Virginia, provides dental services at the Clinic, and has been employed by the Clinic since approximately November 2007.

17.    Defendant Peggy Lovecchio, D.D.S. ("Defendant Lovecchio") is a dentist licensed to practice in the Commonwealth of Virginia since January 23, 2008 and certified by Virginia's Medicaid program in approximately March 2008. Defendant Lovecchio is a resident of Roanoke, Virginia, provides dental services at the Clinic, and

has been employed by the Clinic since approximately January 2008.

## FALSE CLAIMS ACT

18.    Federal law prohibits falsely representing that work has been performed that was not in fact performed, or making misrepresentations in order to obtain payment funds to which a party is not entitled. 31 U.S.C.A. §§ 3729 *et seq.*

19.    The FALSE CLAIMS ACT is the primary law on which the federal government relies to recover losses caused by fraud. Avco Corp. v. Dept. of Justice, 884 F.2d 621, 622 (D.C. Cir. 1989). The FCA creates civil liability for making a false claim for payment by the government:

Any person who-

(1) knowingly presents, or causes to be presented, to an officer or employee of the United States Government or a member of the Armed Forces of the United States a false or fraudulent claim for payment or approval; [or]

(2) knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the Government; [or]

(3) conspires to defraud the Government by getting a false or fraudulent claim allowed or paid;

....

is liable to the United States Government....

31 U.S.C. § 3729(a). The FCA also permits private citizens to bring qui tam suits to enforce the FCA. Id. § 3730(b).

20.    The Supreme Court has stated that Congress intended that the FCA be broadly applied to protect government funds and property from fraudulent claims. U.S. v. Niefert-White Co., 390 U.S. 228 (1968).

21.    There are at least two (2) recognized theories pursuant to which federal

health care program claims for services which are not medically necessary or fall below the standard level of health care are legally false. These theories include:

(1) "Express Certification." An expressly false claim occurs where a provider falsely certified compliance with a statute, regulation, or contractual term as a prerequisite to payment. Presentation of a Medicaid claim on Health Care Financing Administration's ("HCFA") Claim Form 1500 requires the health care provider to certify, on the claim or simultaneously with it, that the product or services provided were "medically indicated and necessary to the health of [the] patient." All Medicaid claims for payment are submitted on HCFA Form 1500. Accordingly, if a provider submits a claim for reimbursement for a service that is not medically necessary, the provider has falsely certified compliance and has therefore violated the FCA.

(2) "Implied Certification." Here, a Medicaid health care service provider is required to sign certifications and representations of compliance with applicable law in applications to be recognized as a participant in Medicaid, and to certify compliance in periodic reports and statements required to remain a participant. These certifications are therefore preconditions to eligibility to present a claim that the provider must comply with in order to be paid. Where a provider violates the terms of participation, these certifications become false, and by legal implication, claims filed after the violation are false.

**VIRGINIA FRAUD AGAINST TAXPAYERS ACT**

22.    While the FCA imposes civil liability for the presentation to the Federal Government of a false claim for payment, the VFATA mirrors the FCA, imposing liability for presentation of false claims to the Commonwealth of Virginia.

23.    The VFATA imposes civil liability on "Any person who:

(1) knowingly presents, or causes to be presented, to an officer or employee of the Commonwealth a false or fraudulent claim for payment or approval; [or]

(2) knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the Commonwealth; [or]

(3) conspires to defraud the Commonwealth by getting a false or fraudulent claim allowed or paid; ...."

VA. CODE ANN. § 8.01-216.3. The VFATA permits private persons to bring an action on behalf of the Commonwealth. Id. § 8.01-216.5.

**VIRGINIA'S MEDICAID DENTAL PROGRAM AND FAMIS**

24.    Medicaid is a jointly funded State and Federal health insurance program primarily for eligible low-income individuals, children, pregnant women, parents of eligible children, seniors, and people with disabilities. Medicaid was created in 1965 through Title XIX of the SOCIAL SECURITY ACT. Dental services under the Medicaid program are an optional service for the adult population, individuals age 21 and older. However, dental services are a required service for most Medicaid-eligible individuals under the age of 21, as a required component of the Early and Periodic Screening, Diagnostic and Treatment benefit, Medicaid's child health program.

25.    FAMIS Plus is Virginia's name for children's Medicaid. Family Access to Medical Insurance Security Plan ("FAMIS") is a joint Federal and State program that

provides low-cost health insurance for children in families that earn too much for FAMIS Plus (Medicaid) but do not have private health insurance. Hereinafter, the FAMIS and FAMIS Plus programs in Virginia are jointly referred to as "Medicaid," and causes of action being asserted to herein include claims submitted under both of these programs.

26.   In Virginia, the *Smiles for Children* program is the name for Virginia's Medicaid dental care program. Doral Dental USA, LLC ("Doral Dental") is a for-profit company which, under contracts with the Commonwealth of Virginia, serves as the single dental benefits administrator to coordinate all Medicaid dental services in the Commonwealth of Virginia.

27.   The enabling legislation and regulations of the Medicaid program requires health care providers to assure that they provide services only where the services "will be provided economically and only when, and to the extent, medically necessary" and that the services "will be of a quality which meets professionally recognized standards of health care." 42 U.S.C. § 1320c-5(a)(1); 42 C.F.R. § 1004.10(a).

28.   The Federal government placed responsibility on each state to structure the Medicaid program within statutorily specified parameters, including defining the term "medically necessary." 42 U.S.C. § 1396a; 42 C.F.R. § 440.230(d).

29.   Virginia's Medicaid dental program defines "medically necessary" to mean those medical, dental, behavioral, rehabilitative or other health care services which:

- are reasonable and necessary to prevent illness or medical conditions, or provide early screening, interventions, and/or treatment for conditions that cause suffering or pain, cause physical deformity or limitation in function, cause illness or infirmity, endanger life, or worsen a disability;
- are provided at appropriate facilities and at the appropriate levels of care for the treatment of a member's medical conditions;

9

- are consistent with the diagnoses of the conditions;
- are no more intrusive or restrictive than necessary to provide a proper balance of safety, effectiveness, efficiency and independence; and
- will assist the individual to achieve or maintain maximum functional capacity in performing daily activities, taking into account both the functional capacity of the individual, and those functional capacities that are appropriate for individuals of the same age.

30.    Service providers in the Medicaid program in Virginia are engaged via a form contract with Doral Dental, captioned "Provider Service Agreement." **(Exhibit 30)** This Provider Service Agreement stipulates that covered services are those services deemed medically necessary, and the Agreement contains a representation and warranty that the provider will "provide dental care which meets or exceeds the average standard of care for dentists practicing in the region and will comply with all standards for dentists as established by any State or Federal law or regulation."    The Provider Service Agreement also requires providers "to refund payments if they are found to have [been] billed contrary to law, regulation, or [Virginia Medicaid] policy or failed to maintain adequate documentation in support of their claims." (Exhibit 30 at Attachment A, § 2.01) In order to qualify for Virginia Medicaid, all Defendants have entered into examples of the Provider Service Agreement containing this text.

## FACTS OF CASE

31.    As set forth below, Defendant Clinic and Defendant dentists fraudulently provided or failed to provide services involving nitrous oxide sedation, papoose board immobilization behavior management, other advanced behavior management, intensive dental procedures, and surgical extractions, and made claims for such services.  Certain Defendants also falsified the identity of the provider on Medicaid Claims, and all Defendants engaged in conspiratorial conduct to submit or cause to be submitted false

claims to Medicaid.

32.    Except where otherwise stated, to the best of Relator's knowledge, the fraudulent practices began in August 2007 when the Clinic hired Defendant Ellington as its Chief Dentist and continue today under his management.

33.    Relator has a relative who still works in the Clinic, corroborates Relator's facts, and has provided certain information that has occurred after Relator ended her employment at the Clinic.

### The Small Smiles Practice

34.    The clientele of the Clinic consists almost entirely of Medicaid beneficiaries.  The Clinic also limits its practice to pediatric dentistry almost exclusively, hence the "small" in Small Smiles.

35.    The Clinic serves approximately seventy-six (76) to one-hundred twenty (120) children each day.  Approximately 50% of the children are under the age of five.

36.    The Clinic is divided into two work sections – the Hygiene Section, used for checkups and teeth cleaning, and the Operative Section, used for surgical and other restorative dental work.  Approximately 60% of the children begin their services in the Hygiene Section, and each day the Clinic's dentists transfer between two (2) to twenty (20) children from the Hygiene Section to the Operative Section.  Approximately 40% of the children begin their services in the Operative Section.

37.    Defendant Clinic advertises its practice in part by disbursing advertising literature to children at local schools, and on occasion provides bus transportation to transport large groups of children from nearby schools to the Clinic.

38.    Based on instructions and policies provided by Defendant FORBA,

Defendant Clinic provides bonuses to their dentists and dental assistants based upon the monthly volume and income of the clinic. Bonuses vary based upon stated monthly income goals. The Clinic posts this bonus policy in its office.

39.    The Clinic has a policy of not allowing parents to attend their children in the exam rooms. Defendant Ellington instructed dental assistants of the Clinic to inform parents that wished to accompany their child during procedures that such attendance was a Health Insurance Portability and Accountability Act ("HIPAA") violation or that it was at the discretion of the dentist. In fact, such attendance does not violate HIPAA or any other law.

40.    At the Clinic, dental assistants prepare the Encounter Forms for approval and signature by the dentists. The practice is for the dental assistant to prepare the Encounter Form after a procedure is complete and to turn the Encounter Form over to an office assistant in a central location in the Clinic for billing purposes. The office assistant then places the Encounter Form in separate piles awaiting the dentists' approval and signature. The Encounter Forms are the reports on which Medicaid claims on HCFA 1500 Forms are prepared by office personnel at the Clinic.

41.    As a dental assistant, the Relator personally prepared Encounter Forms and similar dental records and charts after assisting dentists in the procedures.

### FORBA Direction and Management of Defendant Clinic and Defendant Dentists and Knowledge of Legal Violations

42.    Defendant FORBA handles the recruiting, hiring and training of all dentists employed by Defendant Clinic. Defendant FORBA also issues and institutes policies and procedures which Defendant Clinic follows and directs Defendant Clinic's

compensation of its dentists.

43.     One such policy which Defendant FORBA institutes is a bonus incentive for an increased volume of patients.  *See* ¶ 38, supra.

44.     During November 2007, television news reports were broadcast of news media personnel working undercover to investigate poor dental practices and Medicaid fraud occurring at Maryland and Washington D.C. Small Smiles branch locations.  After these reports surfaced, Defendant FORBA sent faxes to all of its branch locations instructing clinics not to make any public statements about the investigation and not to shred any documents.

45.     Dental Assistants other than Relator took steps to inform FORBA of the facts complained about herein.  Specifically, Dental Assistants LaVond Franklin, Sara Gains, and Amanda Beltcher wrote letters to FORBA about the fraudulent and dangerous practices of the Clinic.  Amanda Beltcher in particular wrote a lengthy, approximately six-page letter to FORBA.  Dental Assistants Keri Dudley and Linda Akers spoke personally on these topics with corporate officials when FORBA officers and employees visited the Clinic.

46.     At least one senior official of Defendant FORBA was personally present in the Clinic premises, witnessed Defendants Lovecchio and Thomas performing dental procedures before they received Medicaid certification, and was  informed  that Defendant Ellington was signing off on their procedures as though he personally had performed them.  See infra ¶¶ 93 & 96.

### *Systematic Administration of Nitrous Oxide Sedation When Not Medically Necessary*

13

47.    Nitrous oxide is used during some dental procedures to reduce pain, lessen anxiety, and for some behavior management purposes.

48.    Certain medical "indications" must be shown by the patient for the dentist to deem a dental service medically necessary.  Indications for the use of nitrous oxide include: (1) a fearful, anxious, or obstreperous patient, (2) certain mentally, physically, or medically compromised patients, (3) a patient whose gag reflex interferes with dental care, (4) a patient for whom profound local anesthesia cannot be obtained, and (5) a cooperative child undergoing a lengthy dental procedure.

49.    A "contraindication" is a specific situation in which a drug, procedure, or other medical/dental service should not be used because it may be harmful to the patient.  Contraindications for the use of nitrous oxide include chronic obstructive pulmonary disease, such as sickle cell anemia, severe emotional disturbances or drug-related dependencies, first trimester of pregnancy, and treatment with bleomycin sulfate.  Appropriate fasting by the patient before sedation should also take place to avoid nausea and vomiting.  Health care providers administering any sedation must carefully evaluate and document patients for underlying conditions that could place them at an increased risk.

50.    Dental guidelines mandate that the use of sedation for children age twelve and under be avoided except in extraordinary situations due to the risks of unobserved respiratory obstruction and the possibility that children may reach unintended higher levels of sedation despite the intended level of minimal sedation.

51.    Medicaid covers the expense and service costs of nitrous oxide, and the administration of nitrous oxide is reported using the American Dental Association's code

of dental procedures and nomenclature, Current Dental Terminology ("CDT") as CDT Code D9230. The Medicaid reimbursement for this CDT code item is $33.74 per claim.

52.    Following the replacement of the prior Defendant Clinic's Chief Dentist, Dr. David Jones ("Dr. Jones"), by Defendant Ellington in August 2007, the Clinic's use of nitrous oxide significantly increased. Under Defendant Ellington's management, approximately 80-85% of the patients receive nitrous oxide, whereas before the Clinic only used nitrous oxide on approximately 5% of the patients.

53.    Defendant Ellington instructs clinic employees to administer nitrous oxide on every patient, unless the patient is pregnant or forcibly refuses it. These patients receiving nitrous oxide include patients with contraindications, such as sickle cell anemia or asthma, as well as patients who have not fasted prior to the sedation.

54.    Approximately September 2007, the Relator asked Defendant Ellington why he used the nitrous oxide so often. In response, Defendant Ellington told the Relator that the Clinic "gets $35 every time we turn the nitrous on." The context and circumstance of this statement made clear that Defendant Ellington intended the Clinic to administer nitrous oxide in as many cases as possible regardless of the presence or absence of medical indications for nitrous oxide.

55.    As the Clinic so regularly bills for nitrous oxide services, the Clinic's Encounter Form **(Exhibit 55)** has a section for nitrous oxide administration that allows for simple marks indicating whether or not nitrous oxide was administered.

56.    On information and belief, Defendant Clinic and Defendant Dentists systematically defrauded the United States and the Commonwealth of Virginia by administering nitrous oxide sedation to all patients except pregnant women and persons

forcibly declining to receive it, regardless of the presence or absence of indications for sedation. The majority of administrations of nitrous oxide by the Clinic are not medically necessary, and these claims by the Clinic for such services are false. The source of this information is the Relator, and the belief is based on the facts set forth in paragraphs 47 through 55 above, which are personal observations of the Relator.

### Systematic Administration of Nitrous Oxide Sedation by Non-Qualified Individuals

57.    Application of nitrous oxide for a dental procedure must be performed by a qualified dentist who has met the educational requirements appropriate for the level of sedation applied to the patient. Regulations enacted under VA. CODE ANN. § 54.1-2400 expressly prohibit any person other than a dentist or a dental hygienist from administering nitrous oxide. 18 VAC § 60-20-110.

58.    The level of sedation intended through the use of nitrous oxide in dental procedures is minimal sedation. A patient under minimal sedation should be fully conscious and able to maintain verbal communication throughout the procedure. Excessive sleep or unconsciousness can signal respiratory depression, a potentially life-threatening reaction to nitrous oxide that requires first-aid treatment and monitoring.

59.    Under Defendant Ellington's management, dental assistants, rather than dentists, routinely administer nitrous oxide sedation. The Clinic's dental assistants have neither received any formal education or training in the administration of inhalation analgesia, nor obtained certification in basic life support for health care providers. Moreover, a dentist is not usually present during the induction of the sedation at the Clinic. Such administration in the absence of the dentist violates express dental healthcare regulations of the Commonwealth of Virginia and other applicable standards

of care.

60.    Patients frequently remain under sedation for forty-five (45) to ninety (90) minutes.  Relator Crawford witnessed over half of the children receiving nitrous oxide vomit and on occasion witnessed sedated children that appeared to be in a "knocked-out" state.

61.    Defendant Clinic's parent company on occasion temporarily reassigns dentists from other Small Smiles locations to other branches on days where a clinic branch is short a dentist.  On or about November 2007, such a dentist informed the Relator that dental assistants were not qualified to administer nitrous oxide to patients and instructed the Relator not to give the nitrous oxide to patients.  The Relator then asked Defendant Ellington whether or not she should continue with the administration of nitrous oxide sedation.  Defendant Ellington reprimanded the Relator for questioning his assignment of duties to Relator, reminded the Relator that he was the Relator's supervisor, and directed the Relator to continue with the administration of the nitrous oxide.

62.    On information and belief, Defendant Clinic and Defendant Dentists systematically defrauded the United States and the Commonwealth of Virginia by administering nitrous oxide sedation through Clinic employees not legally qualified to perform such services, and otherwise in such a manner that it was unsafe and endangered the lives and health of the patients, and by failing to comply with the terms of Medicaid participation and by submitting Medicaid claims for these services.  The source of this information is the Relator, and the belief is based on the facts set forth in paragraphs 57 through 61 above, which are personal observations of the Relator.

*Behavior Management in Pediatric Dentistry; and Small Smiles'*
*Systematic Use of Papoose Boards When Not Medically Necessary*

63.     Most pediatric dental patients can be managed effectively using basic communicative techniques such as tell-show-do, voice control, positive reinforcement and distraction.  The payment for basic behavior management services is included in the fee for primary dental services.  DEPARTMENT OF HEALTH & HUMAN SERVICES, GUIDE TO CHILDREN'S DENTAL CARE IN MEDICAID app. A. at 19. The Department of Health and Human Services estimates that 85% of children are generally cooperative in dental treatment and do not need behavior management service beyond these basic communication techniques.  Id. at 6.

64.     Services that require a dentist to spend substantially more time than normal because of a child's inability to cooperate are covered services and may be billed as "behavior management, by report."  Hereinafter, these behavior management services which extend beyond basic communication techniques are referred to as "advanced behavior management" services.

65.     Medicaid covers the expense and service costs of advanced behavior management services.  The CDT code for advanced behavior management services is D9920, and the Medicaid reimbursement is $68.50.  Providers must document the exhibited behavior that required the use of behavior management techniques and the advanced behavior management techniques employed that went beyond the basic communication techniques otherwise included in the cost of the primary service.

66.     A papoose board is a behavior management device used to restrain a child. The papoose board works by placing the patient on a flat board and wrapping the patient with wide fabric straps that restrain the child's upper body, middle body, and legs,

18

rendering the child immobile and unable to move his or her extremities.

67.    Established standards for pediatric dental care provide for immobilization techniques only where the patient is unwilling or unable to control movements and presents a danger to staff or self during treatment procedures deemed necessary. Parental consent is also required for use of the papoose board.

68.    Under Defendant Ellington's management, the Clinic's use of the papoose board significantly increased over the use under Dr. Jones' management, and Clinic policy under Defendant Ellington was that the parents of every child under five were told their child was misbehaving or uncooperative and needed immobilization, regardless of the true necessity for restraint. Relator Crawford personally observed that most of the children that the dentists ordered restrained were cooperative and well-behaved. However, in most cases, the parents, whom were not allowed to go with their children into the exam rooms, relied on the dentists' word and agreed to allow their children to be restrained to papoose boards.

69.    On information and belief, the Clinic's use of the papoose board traumatizes over half of the children placed on it. The source of this information is the Relator's personal observation of children restrained in procedures she participated in, over half of whom urinated on themselves, vomited, sweated through their clothing, or otherwise exhibited trauma symptoms. Upon orders by Defendant Ellington, Relator and other dental assistants attempted to clean the children as much as possible before sending them back to their parents, including washing their clothes on many occasions so that the parents would not find out that the children had urinated or vomited on themselves. The basis for this belief is the Relator's observation that children restrained in procedures she

19

did not participate in tended to react similarly.

70.     As the Clinic so regularly bills for advanced behavior management services, the Clinic's Encounter From allows for a simple checkmark to indicate whether or not advanced behavior management services were provided.  (See Exhibit 55)

71.     On information and belief, the Clinic's use of the papoose board is not medically necessary for a majority of the children on whom it used.  The source of this information is the Relator's personal observation of children whose behavior did not signal that restraint was necessary and yet were, at the direction of the relevant dentist, still restrained.  The basis for this belief is the Relator's observation that Defendant Dentists' behavior did not vary based on the presence of different dental assistants.

### Billing for Advanced Behavior Management Services Not Rendered

72.     Where Defendant Dentists do not use a papoose board, they frequently instruct the dental assistants to note that advanced behavior management services were rendered for children between the ages of six and fourteen, even where the child was cooperative, posed no problematic behavior to the administration of dental services, and the providing dentist did not spend any additional time encouraging the child to behave.

73.     As the Clinic so regularly bills for advanced behavior management services, the Clinic's Encounter Form allows for a simple checkmark to indicate whether or not advanced behavior management services were provided.  (Exhibit 55)

74.     On information and belief, the Clinic's personnel do not actually provide advanced behavior management in the majority of cases where the Clinic bills for the service.  The source of this information is the Defendant Dentists' frequently instructions

to the Relator to make records of advanced behavior management services in cases where they did not provide such services, and this belief is based on the Relator's observation that Defendant Dentists' practices do not vary based on the presence of different dental assistants.

### Performing Intensive Dental Procedures at the Clinic That Required Referral to a Local Hospital or Specialists

75.     In cases of advanced periodontal disease, extraction of an entire row of teeth or total mouth extraction is sometimes necessary when restoring the teeth to health is no longer possible.

76.     Established standards of pediatric dental care require that general dentists refer patients with advanced periodontal disease who are to undergo whole-mouth extractions or similar treatment to facilities where sedation stronger than nitrous oxide can be administered to avoid the trauma and pain it can cause the child, and to ensure that practitioners better able than dentists to respond to emergent problems are available.

77.     Before Defendant Ellington's arrival at the Clinic, Dr. Jones referred patients requiring whole row or total mouth extractions of their teeth to a local hospital for treatment.    Under Defendant Ellington's management, Defendants Ellington and McQueen performed these intense procedures themselves, despite Defendant Ellington having only two years of overall dental experience and Defendant McQueen having only a few months experience, and both of them lacking any special training to perform such procedures.    Such performance of intense procedures violates established standards of pediatric dental care.

78.     Approximately November 2007, Relator Crawford personally witnessed

Dr. Ellington perform a procedure at the Clinic in which he extracted the entire top row of teeth on a sixteen year old pregnant girl being fitted for dentures.

79.    Approximately November or December of 2007, Relator Crawford personally witnessed Defendant McQueen perform a total mouth extraction at the Clinic on a patient approximately thirteen years old.

80.    Defendant Ellington also refused to refer patients to oral surgeons or general dentists that had specialized training for extraction of wisdom teeth.  Again, Defendant Ellington performed these procedures himself, despite lacking significant experience or special training.  Hereinafter, procedures referring to whole row or total mouth extractions and wisdom teeth extractions are referred to jointly as "intensive" dental services or procedures.

81.    The Clinic's performing of these intensive services was not medically necessary, as defined by the Virginia Medicaid dental program standards, which include in the definition of medical necessity the requirement that the relevant services be performed at appropriate facilities and under an appropriate level of care.  See supra ¶ 29 (quoting Virginia Medicaid's definition of "medically necessary").

82.    On information and belief, Defendant Clinic systematically performed and billed Medicaid for intensive procedures.  The source of this information is the Relator's personal observation of children undergoing intensive procedures by Defendants Ellington and McQueen where the Clinic formerly would have referred those patients to specialists and hospitals that could provide the appropriate expertise, sedation, and other services not available at the Clinic.  The basis for this belief is the Relator's observation that Defendants Ellington and McQueen performed the same types of operations outside

22

the Relator's presence as they did in her presence.

### *Systematic Upcoding of Routine Extraction Services*

83.    Tooth extractions performed without an incision are referred to as "routine extractions" and are billed as CDT Code D7140, which merits a Medicaid reimbursement of $69.00.  Extractions requiring an incision are referred to as "surgical extractions" and billed under CDT Code D7210, which merits a Medicaid reimbursement of $128.00.

84.    Defendant Ellington often instructed Relator Crawford to record a procedure in the Clinic's Encounter Forms as something other than the procedure he actually performed.

85.    Such an incident occurred on or about January 8, 2008, when Relator Crawford personally assisted Defendant Ellington in a dental procedure on an approximately fifteen year old boy with the first name of Jermaine, in which the Clinic billed the procedure as surgical when the procedure did not involve an incision.  Relator Crawford knew the procedure was not surgical in part because the dental tool used was a peri elevator, a spoon-shaped device that is incapable of making surgical cuts.  Defendant Ellington instructed the Relator to record the procedure as surgical.  The Relator checked with the lead dental assistant of the Clinic, and the lead dental assistant agreed with the Relator that the procedure was not surgical.  Thus, the Relator refused to record the procedure as surgical in the Encounter Form.  However, the next day Defendant Ellington altered the Encounter Form himself to show the procedure as surgical.

86.    Other dental assistants experienced similar incidents.  For instance, during employment with Defendant Clinic, Dental Assistant Amanda Beltcher had an incident in which she wrote up an Encounter Form with the proper procedures marked for a child

23

seen by Defendant Ellington. Defendant Ellington did not like Ms. Beltcher's work and changed the procedures recorded on it. Ms. Beltcher made copies of the Encounter Form both before and after Defendant Ellington made his changes, to record what she realized was wrongdoing.

87.     On information and belief, Defendant Ellington billed for services as surgical where the dentist never performed surgical services. The source of this information is the Relator's personal observation of Defendant Ellington performing non-surgical services, Defendant Ellington's stated intent to bill the service as surgical, and Defendant Ellington's alteration of the dental records to show the procedure as surgical. The basis for this belief is the Relator's observation that Defendant Ellington performed the same procedures outside the Relator's presence as he did in her presence and Defendant Ellington's widely stated desire to maximize amounts billed to Medicaid.

### *Falsifying the Identity of the Individual Provider - Background*

88.     Federal law requires states to keep a list of certified providers participating in federal health care programs, such as Medicaid. 42 U.S.C. § 1396a(a)(59).

89.     Before a Virginia dentist may perform services which are billable to Medicaid, the dentist must become a provider by applying and receiving certification and entering into a Provider Service Agreement with Doral Dental, the Medicaid dental administrator for Virginia. The dentist must submit proof of licensing and insurance, and agree to terms of the Provider Service Agreement. Doral Dental reviews the application and returns a response to the provider in approximately ninety (90) days. Until the dentist has received the certification response from Doral Dental, the Clinic cannot make valid claims to Medicaid for services performed by the dentist.

*Falsifying Identity of Provider – Services by Dr. Thomas*

90.     Defendant Thomas began working for the Clinic in late November 2007. Defendant Thomas was not certified as a provider in the Virginia Medicaid dental program until January 7, 2008, but provided dental services to patients since the beginning of her employment at the Clinic.

91.     In approximately November 2007, Relator observed an office assistant giving Defendant Ellington the records of Defendant Thomas' patients. Relator asked the office assistant why she had done this, and the office assistant told the Relator that she gave the records to Defendant Ellington because Defendant Thomas was not yet Medicaid certified.

92.     In November 2007, Defendant Ellington took several days off work from the Clinic. During that time, Relator observed a stack of records accumulate on Defendant Ellington's desk for procedures that Defendant Thomas had performed on Medicaid patients while Defendant Ellington was absent. Defendant Ellington later told Relator that he had signed off on the procedures performed by Defendant Thomas during this time period. On information and belief, this caused Defendant Clinic to submit the claim with Defendant Ellington named as the dentist providing the service when in fact Defendant Thomas was the providing dentist.

93.     On or about March 6, 2008, Dr. Kevin Riley ("Dr. Riley"), who is a senior official of Defendant FORBA, made an unannounced visit to the Clinic. Dr. Riley first approached Defendant Lovecchio about performing work before she was certified by Medicaid, as described infra in paragraph 96. After Dr. Riley spoke to Defendant Lovechhio, he questioned Defendant Thomas whether she had also performed work

before she was certified by Medicaid that Defendant Ellington signed for as though he had personally performed the procedures. Defendant Thomas told Dr. Riley, "I am not going to lie. He (Defendant Ellington) has had me working since I came to the Clinic and he has been signing off on my work as if he had provided it himself."

94.    On information and belief, during the time period spanning the start of Defendant Thomas' employment to her certification in January 2008, upon Defendant Ellington's specific instructions, the Clinic systematically billed for Defendant Thomas' services under Defendant Ellington's PIN. In this practice, Defendant Thomas routinely did not sign the records for the procedures she performed on Medicaid patients, Clinic office personnel instead gave those records to Defendant Ellington for his signature, Defendant Ellington signed these records, and other Clinic employees then prepared and submitted Medicaid claims for these services using Defendant Ellington's PIN number. Thus, the false records caused the Clinic to submit false Medicaid claims for the relevant services, and caused the Clinic to make false statements of PIN numbers in regards to the claims. Relator Crawford is the source of the above information, and the basis for her belief is (a) the facts set forth in paragraphs 88 through 93 above, which the Relator personally observed, and (b) the Relator's observation that record-keeping and Medicaid billing practices are applied consistently by Clinic dentists and billing employees.

### *Falsifying Identity of Provider – Services by Dr. Lovecchio*

95.    Defendant Lovecchio began working for the Clinic in January 2008. Defendant Lovecchio was not certified as a provider in the Virginia Medicaid dental program until approximately March 2008, but Defendant Lovecchio provided dental services to patients since the beginning of her employment at the Clinic.

96.    In March, 2008, Dr. Riley, who is a senior official of Defendant Clinic's owner company, made an unannounced visit to the Clinic as described supra in paragraph 93.  Dr. Riley found Defendant Lovecchio working on a patient.  Dr. Riley knew the patient was a Medicaid beneficiary and that Defendant Lovecchio was not Medicaid certified and asked Defendant Lovecchio why she was performing the procedure. Defendant Lovecchio told Dr. Riley that she was "doing what Dr. Ellington told me to do."  Defendant Lovecchio told Dr. Riley that she was not Medicaid certified and that Defendant Ellington had been signing off on her procedures.    Numerous Clinic employees saw this incident and heard Defendant Lovecchio make this statement to Dr. Riley.

97.    On information and belief, upon Defendant Ellington's specific instructions, Defendant Lovecchio did not sign the records for the procedures she performed on Medicaid patients and office personnel gave those records to Defendant Ellington for his signature.  Defendant Ellington signed these records and the Clinic then billed procedures provided by Defendant Lovecchio during the time period spanning the start of Defendant Lovecchio's employment to her certification in approximately March 2008 under Defendant Ellington's PIN number.  Thus, the false records caused the Clinic to submit false Medicaid claims for the relevant services, and caused the Clinic to make false statements of PIN numbers in regards to the claims.

## DEFENDANTS' VIOLATIONS OF THE FALSE CLAIMS ACT

### *Summary of Violations*

98.    Nitrous Oxide Sedation Not Medically Necessary:  By instituting and carrying out a policy of administering nitrous oxide to almost every patient, regardless of

medical indications for sedation, Defendant Clinic defrauded the United States and the Commonwealth of Virginia by knowingly presenting, and the Defendant Dentists defrauded the United States and the Commonwealth of Virginia by knowingly causing the Clinic to present, false claims to the Virginia Medicaid program for payment of sedation services which were not medically necessary. These claims were false because the lack of medical necessity for the services made the express certification of medical necessity in the HCFA 1500 form, on which the claims were submitted, to be false. Additionally, Defendant Clinic defrauded the United States and the Commonwealth of Virginia by making, and the Defendant Dentists defrauded the United States by causing the Clinic to make, false statements of the medical necessity of such services in the HCFA 1500 forms for the resulting claims.

99. <u>Nitrous Oxide Sedation Administered by Non-Qualified Individuals</u>: By subjecting pediatric and other patients to sedation services that were administered by dental assistants without close supervision where the sedation services should have been administered by qualified dentists that had attained training and education in sedation for pediatric patients and basic life support, Defendant Clinic provided unsafe dental services to such patients, and defrauded the United States and the Commonwealth of Virginia by knowingly presenting, and the Defendant Dentists defrauded the United States and the Commonwealth of Virginia by knowingly causing the Clinic to present, false claims to Medicaid for payment of these services. The claims were false because Defendants had certified in the Medicaid Provider Service Agreement to meet or exceed an average standard of care in the provision of dental services and failing to meet this condition rendered claims filed after the violation of participation false.

100.    <u>Use of Papoose Boards When Not Medically Necessary</u>:  By instituting and carrying out a policy of restraining almost every young patient to a papoose board, regardless of the presence or absence of medical indications for restraints, the Defendant Clinic defrauded the United States and the Commonwealth of Virginia by knowingly presenting, and the Defendant Dentists defrauded the United States and the Commonwealth of Virginia by knowingly causing the Clinic to present, claims to Medicaid for payment of papoose board services which were not medically necessary. These claims were false because the lack of medical necessity for the services make the express certifications of medical necessity in the HCFA 1500 forms, on which the claims were submitted, to be false.  Additionally, Defendant Clinic defrauded the United States and Commonwealth of Virginia by making, and the Defendant Dentists defrauded the United States and Commonwealth of Virginia by causing the Clinic to make, false statements of the medical necessity of such services in the HCFA 1500 forms for the resulting claims.

101.    <u>Advanced Behavior Management Services Not Rendered</u>:    By not rendering advanced behavior management services and then making Medicaid claims for such advanced services, the Defendant Clinic defrauded the United States and Commonwealth of Virginia by knowingly presenting, and the Defendant Dentists defrauded the United States and Commonwealth of Virginia by knowingly causing the Clinic to present, false claims to Medicaid for payment of these services.  These claims were false because advanced behavior management services were not provided.

102.    <u>Intensive Procedures Performed by Unqualified Dentists at an Inappropriate Facility</u>:  By failing to refer patients to specialists and better-equipped

facilities for intensive procedures and by performing complicated procedures without the proper knowledge or specialization, the Defendant Clinic defrauded the United States and the Commonwealth of Virginia by knowingly presenting, and the Defendant Ellington defrauded the United States and Commonwealth of Virginia by knowingly causing the Clinic to present, false claims to Medicaid for payment of these services. These claims were false because they fail to meet Virginia's Medicaid dental program's definition of medical necessity, and the lack of medical necessity for the services make the express certifications of medical necessity in the HCFA 1500 forms, on which the claims were submitted, to be false. Additionally, Defendant Clinic defrauded the United States and Commonwealth of Virginia by making, and the Defendant Dentists defrauded the United States and Commonwealth of Virginia by causing the Clinic to make, false statements of the medical necessity of such services in the HCFA 1500 forms for the resulting claims.

103. <u>Upcoding of Routine Extractions; Claims for Surgical Extraction Services Not Rendered</u>: By rendering routine extraction services and then billing the services as surgical, the Defendant Clinic defrauded the United States and the Commonwealth of Virginia by knowingly presenting, and the Defendant Ellington defrauded the United States and the Commonwealth of Virginia by knowingly causing the Clinic to present, false claims to Medicaid for surgical extraction services. These claims were false because surgical extraction services were not provided, and the routine extraction services the Defendants actually provided were less costly. Additionally Defendant Clinic defrauded the United States and the Commonwealth of Virginia by making, and the Defendant dentists defrauded the United States and the Commonwealth of Virginia by causing the Clinic to make, false statements of the CDT code for the services rendered in

the HCFA 1500 forms for the surgical extraction claims.

104.  <u>Falsifying Identity of Provider – Services by Dr. Thomas</u>:  By falsifying the identity of the provider so that services could be billed to Medicaid while Defendant Thomas waited for Medicaid certification, the Defendant Clinic defrauded the United States by knowingly presenting, and the Defendant Dentists defrauded the United States by knowingly causing the Clinic to present, false claims to Medicaid for payment of these services.  These claims were false because the dentist who actually provided the service was not Medicaid certified.  Additionally, Defendant Clinic defrauded the United States and the Commonwealth of Virginia by making, and the Defendants Ellington and Thomas defrauded the United States and the Commonwealth of Virginia by causing the Clinic to make, statements of the provider PIN number in such claims, which statements were false.

105.  <u>Falsifying Identity of Provider – Services by Dr. Lovecchio</u>:  By falsifying the identity of the provider so that services could be billed to Medicaid while Defendant Lovecchio waited for Medicaid certification, the Defendant Clinic defrauded the United States by knowingly presenting, and the Defendant Dentists defrauded the United States by knowingly causing the Clinic to present, false claims to Medicaid for payment of these services.  These claims were false because the dentist who actually provided the service was not Medicaid certified.  Additionally, Defendant Clinic defrauded the United States and the Commonwealth of Virginia by making, and the Defendants Ellington and Lovecchio defrauded the United States and the Commonwealth of Virginia by causing the Clinic to make, statements of the provider PIN number in such claims, which statements were false.

31

106.  <u>Causing to Present False Claims</u>:  By (1) recruiting, hiring, and training dentists at Defendant Clinic which were not Medicaid-certified prior to beginning of employment at Defendant Clinic, (2) continuing their direction of Defendant Ellington and Defendant Clinic unchanged when dental assistants of Defendant Clinic and other personnel had repeatedly informed Defendant FORBA and Defendant Small Smiles Dentistry for Children, P.C. of the practices complained about herein, and (3) issuing and instituting policies and procedures that encouraged Defendant Dentists to perform unnecessary dental services on children, Defendant FORBA and Defendant Small Smiles Dentistry for Children, P.C. defrauded the United States and the Commonwealth of Virginia by causing the Clinic to submit false claims to Medicaid for these services.

107.  <u>Conspiracy</u>:  Defendants agreed with each other systematically to:  (1) establish, enforce and execute policies to administer nitrous oxide and papoose board services on nearly every patient regardless of need, (2) prevent patients' parents from entering the procedure rooms where parents could witness unnecessary dental services and poor quality of care, (3) use Defendant Ellington's PIN number for claims for non-Medicaid certified dentists, and (4) encourage overbilling of Medicaid, as evidenced by the statement that "the Clinic gets $35 every time [the Clinic] turn[s] the nitrous on," which agreements and policies constitute conspiracies to defraud the United States and the Commonwealth of Virginia by filing false and fraudulent Medicaid claims. Defendants have also conspired to omit disclosing or to actively conceal facts which, if known, would have reduced Medicaid payments or resulted in repayments to Medicaid. Defendants have taken steps in furtherance of those conspiracies, *inter alia,* causing such false claims to be prepared and submitted. The United States and the Virginia Medicaid

32

Program and their fiscal intermediaries were unaware of Defendants' conspiracies and the falsity of the records, statements, and claims made by Defendants and their agents, and as a result thereof, have paid and continue to pay Medicaid reimbursements that they would not otherwise have paid, as intended by Defendants.

## COUNT I

### 31 U.S.C. § 3729(a)(1) and (2)
### Defendant Clinic and Defendant Dentists
### Nitrous Oxide Sedation Not Medically Necessary

108.    Plaintiff re-alleges and incorporates the allegations contained in paragraphs 1 through 97 as if fully set forth herein.

109.    Through the acts described above and otherwise, Defendant Dentists and Defendant Clinic and their agents knowingly caused to be presented to agents of the United States Government claims in order to obtain payment for nitrous oxide sedation dental services, which claims were false and fraudulent because the services were not medically necessary, thereby causing damage to the United States Treasury in violation of 31 U.S.C. § 3729(a)(1), the FALSE CLAIMS ACT.

110.    Through the acts described above and otherwise, Defendant Dentists and Defendant Clinic and their agents knowingly made, used, and/or caused to be made or used statements, including the certifications of medical necessity required for payment in U.S. Government programs, in order to cause the U.S. Government to pay for nitrous oxide sedation dental services supplied by Defendants, which statements were false because such services were not medically necessary, thereby causing damage to the United States Treasury in violation of 31 U.S.C. § 3729(a)(2).

## COUNT II

**31 U.S.C. § 3729(a)(1)**
**Defendant Clinic and Defendant Dentists**
**Nitrous Oxide Sedation Administered by Non-Qualified Individuals**

111.    Plaintiff re-alleges and incorporates the allegations contained in paragraphs 1 through 97 as if fully set forth herein.

112.    Through the acts described above and otherwise, Defendant Dentists and Clinic and their agents knowingly presented or caused to be presented to agents of the United States Government false or fraudulent claims in order to obtain payment from the U.S. Government for nitrous oxide sedation services provided by Defendant Clinic, which claims were false or fraudulent because the sedation services were administered by dental assistants without close supervision where they should have been administered by qualified dentists that had attained training and education in sedation for pediatric patients and basic life support for health care providers.  These claims thereby caused damage to the United States Treasury in violation of 31 U.S.C. § 3729(a)(1).

**COUNT III**

**31 U.S.C. § 3729(a)(1) and (2)**
**Defendant Clinic and Defendant Dentists**
**Papoose Board Restraint Not Medically Necessary**

113.    Plaintiff re-alleges and incorporates the allegations contained in paragraphs 1 through 97 as if fully set forth herein.

114.    Through the acts described above and otherwise, Defendant Dentists and Defendant Clinic and their agents knowingly caused to be presented to agents of the United States Government claims for in order to obtain payment for papoose board behavior management services, which claims were false and fraudulent because such services were not medically necessary, thereby causing damage to the United States

Treasury in violation of 31 U.S.C. § 3729(a)(1).

115.    Through the acts described above and otherwise, Defendant Dentists and Defendant Clinic and their agents knowingly made, used, and/or caused to be made or used statements of medical necessity in order to cause the United States Government to pay for papoose board behavior management services supplied by Defendants, which statements were false because the services were not medically necessary, thereby causing damage to the United States Treasury in violation of 31 U.S.C. § 3729(a)(2).

**COUNT IV**

**31 U.S.C. § 3729(a)(1) and (2)**
**Defendant Clinic and Defendant Dentists**
**Advanced Behavior Management Services Not Rendered**

116.    Plaintiff re-alleges and incorporates the allegations contained in paragraphs 1 through 97 as if fully set forth herein.

117.    Through the acts described above and otherwise, Defendant Dentists and Defendant Clinic and their agents knowingly caused to be presented to agents of the United States Government claims in order to cause the U.S. Government to pay for advanced behavior management services which claims were false and fraudulent because the Defendants did not provide advanced behavior management services, thereby causing damage to the United States Treasury in violation of 31 U.S.C. § 3729(a)(1), the FALSE CLAIMS ACT.

118.    Through the acts described above and otherwise, Defendant Dentists and Defendant Clinic and their agents knowingly made, used, and/or caused to be made or used statements of the CDT code for advanced behavior management services, including the statement on the claim form, in order to cause the U.S. Government to pay

Defendants for such services, which statements were false because advanced behavior management services were not actually provided, thereby causing damage to the United States Treasury in violation of 31 U.S.C. § 3729(a)(2).

## COUNT V

### 31 U.S.C. § 3729(a)(1) and (2)
### Defendant Clinic and Defendant Dentists Ellington and McQueen
### Intensive Dental Procedures Performed by
### Unqualified Dentists at an Inappropriate Facility

119.    Plaintiff re-alleges and incorporates the allegations contained in paragraphs 1 through 97 as if fully set forth herein.

120.    Through the acts described above and otherwise, Defendant Ellington and Defendant Clinic and their agents knowingly caused to be presented to agents of the United States Government claims in order to obtain payment for intensive dental services, which claims were false and fraudulent because the services were not medically necessary, thereby causing damage to the United States Treasury in violation of 31 U.S.C. § 3729(a)(1), the FALSE CLAIMS ACT.

121.    Through the acts described above and otherwise, Defendant Ellington and Defendant Clinic  and their agents knowingly made, used, and/or caused to be made or used statements, including the certifications of medical necessity required for payment in U.S. Government programs, in order to cause the U.S. Government to pay for intensive dental services supplied by Defendants, which statements were false because the services were not medically necessary, thereby causing damage to the United States Treasury in violation of 31 U.S.C. § 3729(a)(2).

## COUNT VI

### 31 U.S.C. § 3729(a)(1) and (2)

**Defendant Ellington and Clinic**
**Upcoding of Routine Extractions;**
**Claims for Surgical Extraction Services Not Rendered**

122.    Plaintiff re-alleges and incorporates the allegations contained in paragraphs 1 through 97 as if fully set forth herein.

123.    Through the acts described above and otherwise, Defendant Ellington and Defendant Clinic and their agents knowingly caused to be presented to agents of the United States Government claims in order to cause the U.S. Government to pay for surgical extraction services, which claims were false and fraudulent because Defendants did not provide surgical extraction services, but actually provided other, less costly services, thereby causing damage to the United States Treasury in violation of 31 U.S.C. § 3729(a)(1), the FALSE CLAIMS ACT.

124.    Through the acts described above and otherwise, Defendant Ellington and Defendant Clinic and their agents knowingly made, used, and/or caused to be made or used statements of the CDT code for surgical extraction services, including the statement on the claim form, in order to cause the U.S. Government to pay Defendants for surgical extraction services, which statements were false because the extraction services provided were not surgical, thereby causing damage to the United States Treasury in violation of 31 U.S.C. § 3729(a)(2).

## COUNT VII

**31 U.S.C. § 3729(a)(1) and (2)**
**Defendant Clinic and Defendant Dentists Ellington and Thomas**
**Falsifying the Identity of the Provider (Services by Dr. Thomas)**

125.    Plaintiff re-alleges and incorporates the allegations contained in paragraphs 1 through 97 as if fully set forth herein.

126.    Through the acts described above and otherwise, Defendant Clinic and its agents knowingly presented, and Defendant Dentists Ellington and Thomas knowingly caused to be presented, to agents of the United States Government claims for payment for dental services actually provided by Defendant Thomas, which claims were false and fraudulent because of the false certification in the claim by Defendant Ellington that he or employees under his personal supervision performed the services, thereby causing damage to the United States Treasury in violation of 31 U.S.C. § 3729(a)(1), the FALSE CLAIMS ACT.

127.    Through the acts described above and otherwise, Defendant Clinic and its agents knowingly made and used, and Defendant Dentists Ellington and Thomas knowingly caused to be made and used, in order to get claims paid by the Government for dental services actually provided by Dr. Thomas, records and statements of the PIN of the dentist providing such services, which records and statements were false because they listed the PIN for Dr. Ellington, and which claims were false and fraudulent because they were for services provided by a non-Medicaid certified dentist, thereby causing damage to the United States Treasury in violation of 31 U.S.C. § 3729(a)(2) , the FALSE CLAIMS ACT.

### COUNT VIII

**31 U.S.C. § 3729(a)(1) and (2)**
**Defendant Clinic and Defendant Dentists Ellington and Lovecchio**
**Falsifying the Identity of the Provider (Services by Dr. Lovecchio)**

128.    Plaintiff re-alleges and incorporates the allegations contained in paragraphs 1 through 97 as if fully set forth herein.

129.    Through the acts described above and otherwise, Defendant Clinic and its

agents knowingly presented, and Defendant Dentists Ellington and Lovecchio knowingly caused to be presented, to agents of the United States Government claims for payment for dental services actually provided by Defendant Lovecchio, which claims were false and fraudulent because of the false certification in the claim by Defendant Ellington that he or employees under his personal supervision performed the services, thereby causing damage to the United States Treasury in violation of 31 U.S.C. § 3729(a)(1), the FALSE CLAIMS ACT.

130.    Through the acts described above and otherwise, Defendant Clinic and its agents knowingly made and used, and Defendant Dentists Ellington and Lovecchio knowingly caused to be made and used, in order to get claims paid by the Government for dental services actually provided by Dr. Lovecchio, records and statements of the PIN of the dentist providing such services, which records and statements were false because they listed the PIN for Dr. Ellington, and which claims were false and fraudulent because they were for services provided by a non-Medicaid certified dentist, thereby causing damage to the United States Treasury in violation of 31 U.S.C. § 3729(a)(2) , the FALSE CLAIMS ACT.

## COUNT IX

### 31 U.S.C. § 3729(a)(1)
### Defendant FORBA and Defendant Small Smiles for Children, P.C.
### Causing to Present False Claims

131.    Plaintiff re-alleges and incorporates the allegations contained in paragraphs 1 through 97 as if fully set forth herein.

132.    Through the acts described above and otherwise, Defendant FORBA and Defendant Small Smiles for Children, P.C. and their agents knowingly caused to be

presented to agents of the United States Government claims for payment of dental services involving (1) services that were not medically necessary, (2) upcoded services, (3) services not rendered, (4) falsified statements as to the identity of the provider, and (5) services that failed to meet the legally required quality of dental care, thereby causing damage to the United States Treasury in violation of 31 U.S.C. § 3729(a)(1), the FALSE CLAIMS ACT.

## COUNT X

### 31 U.S.C. § 3729(a)(3)
### All Defendants
### Conspiracy under the False Claims Act

133.    Plaintiffs re-allege and incorporate the allegations contained in paragraphs 1 through 97 as if fully set forth herein.

134.    Through the acts described above and otherwise, Defendant Dentists and Defendant Clinic and their agents each entered into a conspiracy with each other to defraud the United States by submitting false or fraudulent claims for payment. By reason of Defendants' conspiracies and the acts taken in furtherance thereof, the United States has been damaged by the loss of Medicaid funds in violation of 31 U.S.C. § 3729(a)(3).

## COUNT XI

### VA. CODE ANN. § 8.01-216.3(A)(1) and (2)
### Defendant Clinic and Defendant Dentists
### Nitrous Oxide Sedation Services Not Medically Necessary

135.    Plaintiff re-alleges and incorporates the allegations contained in paragraphs 1 through 97 as if fully set forth herein.

136.    Through the acts described above and otherwise, Defendant Dentists and

Defendant Clinic and their agents knowingly caused to be presented to agents of the Commonwealth of Virginia claims in order to obtain payment for nitrous oxide sedation dental services, which claims were false and fraudulent because the services were not medically necessary, thereby causing damage to the Commonwealth of Virginia in violation of VA. CODE ANN. § 8.01-216.3(A)(1), the VIRGINIA FRAUD AGAINST TAXPAYERS ACT.

137.    Through the acts described above and otherwise, Defendant Dentists and Defendant Clinic and their agents knowingly made, used, and/or caused to be made or used statements, including the certifications of medical necessity required for payment in Medicaid programs, in order to cause the Commonwealth of Virginia to pay for nitrous oxide sedation dental services supplied by Defendants, which statements were false because such services were not medically necessary, thereby causing damage to the Commonwealth of Virginia in violation of VA. CODE ANN. § 8.01-216.3(A)(2).

## COUNT XII

### VA. CODE ANN. § 8.01-216.3(A)(1)
### Defendant Clinic and Defendant Dentists
### Nitrous Oxide Sedation Administered by Non-Qualified Individuals

138.    Plaintiff re-alleges and incorporates the allegations contained in paragraphs 1 through 97 as if fully set forth herein.

139.    Through the acts described above and otherwise, Defendant Dentists and Clinic and their agents knowingly presented or caused to be presented to agents of the Commonwealth of Virginia false or fraudulent claims in order to obtain payment from the Commonwealth for nitrous oxide sedation services provided by Defendant Clinic, which claims were false or fraudulent because the sedation services were administered by

dental assistants without close supervision where they should have been administered by qualified dentists that had attained training and education in sedation for pediatric patients and basic life support for health care providers. These claims thereby caused damage to the Commonwealth of Virginia in violation of VA. CODE ANN. § 8.01-216.3(A)(1).

## COUNT XIII

### VA. CODE ANN. § 8.01-216.3(A)(1) and (2)
### Defendant Clinic and Defendant Dentists
### Papoose Board Services Not Medically Necessary

140.    Plaintiff re-alleges and incorporates the allegations contained in paragraphs 1 through 97 as if fully set forth herein.

141.    Through the acts described above and otherwise, Defendant Dentists and Defendant Clinic and their agents knowingly caused to be presented to agents of the Commonwealth of Virginia claims for in order to obtain payment for papoose board behavior management services, which claims were false and fraudulent because such services were not medically necessary, thereby causing damage to the Commonwealth of Virginia in violation of VA. CODE ANN. § 8.01-216.3(A)(1).

142.    Through the acts described above and otherwise, Defendant Dentists and Defendant Clinic and their agents knowingly made, used, and/or caused to be made or used statements of medical necessity in order to cause the Commonwealth of Virginia to pay for papoose board behavior management services supplied by Defendants, which statements were false because the services were not medically necessary, thereby causing damage to the Commonwealth of Virginia in violation of VA. CODE ANN. § 8.01-216.3(A)(2).

## COUNT XIV

### VA. CODE ANN. § 8.01-216.3(A)(1)and (2)
### Defendant Clinic and Defendant Dentists
### Advanced Behavior Management Services Not Rendered

143.    Plaintiff re-alleges and incorporates the allegations contained in paragraphs 1 through 97 as if fully set forth herein.

144.    Through the acts described above and otherwise, Defendant Dentists and Defendant Clinic and their agents knowingly caused to be presented to agents of the Commonwealth of Virginia claims in order to cause the Commonwealth to pay for advanced behavior management services which claims were false and fraudulent because the Defendants did not provide advanced behavior management services but did not do so, thereby causing damage to the Commonwealth of Virginia in violation of VA. CODE ANN. § 8.01-216.3(A)(1), the VIRGINIA FRAUD AGAINST TAXPAYERS ACT.

145.    Through the acts described above and otherwise, Defendant Dentists and Defendant Clinic and their agents knowingly made, used, and/or caused to be made or used statements of the CDT code for advanced behavior management services, including the statement on the claim form, in order to cause the Commonwealth of Virginia to pay Defendants for such services, which statements were false because advanced behavior management services were not actually provided, thereby causing damage to the Commonwealth of Virginia in violation of VA. CODE ANN. § 8.01-216.3(A)(2).

## COUNT XV

### VA. CODE ANN. § 8.01-216.3(A)(1) and (2)
### Defendant Clinic and Defendants Ellington and McQueen
### Intensive Dental Procedures Performed by
### Unqualified Dentists at an Inappropriate Facility

146.    Plaintiff re-alleges and incorporates the allegations contained in

paragraphs 1 through 97 as if fully set forth herein.

147.    Through the acts described above and otherwise, Defendant Ellington and Defendant Clinic and their agents knowingly caused to be presented to agents of the Commonwealth of Virginia claims for in order to obtain payment intensive dental services, which claims were false and fraudulent because the services were not medically necessary, thereby causing damage to the Commonwealth of Virginia in violation of VA. CODE ANN. § 8.01-216.3(A)(1), the VIRGINIA FRAUD AGAINST TAXPAYERS ACT.

148.    Through the acts described above and otherwise, Defendant Ellington and Defendant Clinic and their agents knowingly made, used, and/or caused to be made or used statements, including the certifications of medical necessity required for payment in Medicaid programs, in order to cause the Commonwealth of Virginia to pay for intensive dental services supplied by Defendants, which statements were false because the services were not medically necessary, thereby causing damage to the United States Treasury in violation of VA. CODE ANN. § 8.01-216.3(A)(2).

## COUNT XVI

### VA. CODE ANN. § 8.01-216.3(A)(1) and (2)
### Defendant Ellington and Defendant Clinic
### Upcoding of Routine Extractions;
### Claims for Surgical Extraction Services Not Rendered

149.    Plaintiff re-alleges and incorporates the allegations contained in paragraphs 1 through 97 as if fully set forth herein.

150.    Through the acts described above and otherwise, Defendant Ellington and Defendant Clinic and their agents knowingly caused to be presented to agents of the Commonwealth of Virginia claims in order to cause the Commonwealth to pay for

surgical extraction services, which claims were false and fraudulent because Defendants did not provide surgical extraction services, but actually provided other, less costly services, thereby causing damage to the Commonwealth of Virginia in violation of VA. CODE ANN. § 8.01-216.3(A)(1), the VIRGINIA FRAUD AGAINST TAXPAYERS ACT.

151.    Through the acts described above and otherwise, Defendant Ellington and Defendant Clinic and their agents knowingly made, used, and/or caused to be made or used statements of the CDT code for surgical extraction services, including the statement in the claim form, in order to cause the Commonwealth to pay for Defendants' surgical extraction services, which statements were false because the extraction services provided were not surgical, thereby causing damage to the Commonwealth of Virginia in violation of VA. CODE ANN. § 8.01-216.3(A)(2).

## COUNT XVII

### VA. CODE ANN. § 8.01-216.3(A)(1) and (2)
### Defendant Clinic and Defendant Dentists Ellington and Thomas
### Falsifying the Identity of the Provider (Services by Dr. Thomas)

152.    Plaintiff re-alleges and incorporates the allegations contained in paragraphs 1 through 97 as if fully set forth herein.

153.    Through the acts described above and otherwise, Defendant Clinic and its agents knowingly presented, and Defendant Dentists Ellington and Thomas knowingly caused to be presented, to agents of the Commonwealth of Virginia claims for payment for dental services actually provided by Defendant Thomas, which claims were false and fraudulent because of the false certification in the claim by Defendant Ellington that he or employees under his personal supervision performed the services, thereby causing damage to the Commonwealth of Virginia in violation of VA. CODE ANN. § 8.01-

216.3(A)(1), the VIRGINIA FRAUD AGAINST TAXPAYERS ACT.

154.    Through the acts described above and otherwise, Defendant Clinic and its agents knowingly made and used, and Defendant Dentists Ellington and Thomas knowingly caused to be made and used, in order to get claims paid by the Commonwealth for dental services actually provided by Dr. Thomas, records and statements of the PIN of the dentist providing such services, which records and statements were false because they listed the PIN for Dr. Ellington, and which claims were false and fraudulent because they were for services provided by a non-Medicaid certified dentist, thereby causing damage to the Commonwealth of Virginia in violation of VA. CODE ANN. § 8.01-216.3(A)(2), the VIRGINIA FRAUD AGAINST TAXPAYERS ACT.

## COUNT XVIII

### VA. CODE ANN. § 8.01-216.3(A)(1) and (2)
### Defendant Clinic and Defendant Dentists Ellington and Lovecchio
### Falsifying the Identity of the Provider (Services by Dr. Lovecchio)

155.    Plaintiff re-alleges and incorporates the allegations contained in paragraphs 1 through 97 as if fully set forth herein.

156.    Through the acts described above and otherwise, Defendant Clinic and its agents knowingly presented, and Defendant Dentists Ellington and Lovecchio knowingly caused to be presented, to agents of the Commonwealth of Virginia claims for payment for dental services actually provided by Defendant Lovecchio, which claims were false and fraudulent because of the false certification in the claim by Defendant Ellington that he or employees under his personal supervision performed the services, thereby causing damage to the Commonwealth of Virginia in violation of VA. CODE ANN. § 8.01-216.3(A)(1), the VIRGINIA FRAUD AGAINST TAXPAYERS ACT.

157.    Through the acts described above and otherwise, Defendant Clinic and its agents knowingly made and used, and Defendant Dentists Ellington and Lovecchio knowingly caused to be made and used, in order to get claims paid by the Commonwealth for dental services actually provided by Dr. Lovecchio, records and statements of the PIN of the dentist providing such services, which records and statements were false because they listed the PIN for Dr. Ellington, and which claims were false and fraudulent because they were for services provided by a non-Medicaid certified dentist, thereby causing damage to the Commonwealth of Virginia in violation of VA. CODE ANN. § 8.01-216.3(A)(2), the VIRGINIA FRAUD AGAINST TAXPAYERS ACT.

### COUNT XIX

**VA. CODE ANN. § 8.01-216.3(A)(1)**
**Defendant FORBA and Defendant Small Smiles for Children, P.C.**
**Causing to Present False Claims**

158.    Plaintiff re-alleges and incorporates the allegations contained in paragraphs 1 through 97 as if fully set forth herein.

159.    Through the acts described above and otherwise, Defendant FORBA and Defendant Small Smiles for Children, P.C. and their agents knowingly caused to be presented to agents of the Commonwealth of Virginia claims for payment of dental services involving (1) services that were not medically necessary, (2) upcoded services, (3) services not rendered, (4) falsified statements as to the identity of the provider, and (5) services that failed to meet the legally required quality of dental care, thereby causing damage to the Commonwealth of Virginia in violation of VA. CODE ANN. § 8.01-216.3(A)(1), the VIRGINIA FRAUD AGAINST TAXPAYERS ACT.

### COUNT XX

VA. CODE ANN. § 8.01-216.3(A)(3) Conspiracy
**All Defendants**
**Claims for Dental Services**

160.    Plaintiffs re-allege and incorporate the allegations contained in paragraphs 1 through 97 as if fully set forth herein.

161.    Through the acts described above and otherwise, Defendant Dentists and Defendant Clinic and their agents each entered into a conspiracy with each other to defraud the Commonwealth of Virginia by submitting false or fraudulent claims for Medicaid payment. Defendants have also conspired to omit disclosing or to actively conceal facts which, if known, would have reduced Medicaid payments or resulted in repayments to Medicaid. By reason of Defendants' conspiracies and the acts taken in furtherance thereof, the Commonwealth of Virginia has been damaged by the loss of Medicaid funds in violation of VA. CODE ANN. § 8.01-216.3(A)(3).

**PRAYER FOR RELIEF**

Plaintiff demands judgment against the Defendants and each of them as follows:

a. That by reason of the violations of the FCA, this Court enter judgment against Defendants in an amount equal to three (3) times the amount of damages the United States Government has sustained because of Defendants' actions, plus a civil penalty of not less than Five Thousand Five Hundred Dollars ($5,500.00) and not more than Eleven Thousand Dollars ($11,000.00) for each violation of 31 U.S.C. § 3729;

b. That Relator, as a *qui tam* Plaintiff, be awarded the maximum amount allowed pursuant to Section 3730(d) of the FCA and/or any other applicable provision of law;

48

c. That by reason of the violations of the VFATA, this Court enter judgment against Defendants in an amount equal to three (3) times the amount of damages the Commonwealth of Virginia has sustained because of Defendants' actions, plus a civil penalty of not less than Five Thousand Dollars ($5,000) and not more than Ten Thousand Dollars ($10,000) for each violation of VA. CODE ANN. § 8.01-216.3;

d. That Relator, as a *qui tam* Plaintiff, be awarded the maximum amount allowed pursuant to VA. CODE ANN. § 8.01-216.7 and/or any other applicable provision of law;

e. That Relator be awarded all costs of this action, including attorney's fees and court costs;

f. That Plaintiffs be granted a trial by jury; and

g. That Plaintiffs have such other relief as the Court deems just and proper.

Dated: June 12, 2008

Respectfully submitted,

William H. Lindsey, Esquire
William H. Lindsey, P.C.
P. O. Box 958
628 South Colorado Street
Salem, VA 24153
Office: (540)375-3833
Fax (540)375-3810
VSB No. 21964
Attorney for Relator

David P. Parker, Esquire
Liles Parker PLLC
4400 MacArthur Boulevard, NW,

Suite 203
Washington, DC  20007
Office: (202) 298-8750
Fax: (202) 337-5804
VSB No. 14353
Attorney for Relator

## **TABLE OF EXHIBITS**

| EXHIBIT NUMBER | ITEM |
| --- | --- |
| 30 | FORM OF MEDICAID PROVIDER SERVICE AGREEMENT |
| 55 | SMALL SMILES ENCOUNTER FORM |